**William W. JORDAN, Jr., Plaintiff,**

v.

**AXICOM SYSTEMS, INC., and James A. McFadden, Defendants.**

**Civ. A. No. 1100-72.**

United States District Court, District of Columbia.

Dec. 12, 1972.

Earl H. Davis, and Barry J. Nace, Washington, D. C., for plaintiff.

Arthur Schmauder, Newark, N. J., for defendants.

MEMORANDUM OPINION AND ORDER

GESELL, District Judge.

Jordan, formerly Chief of the Tire Branch, National Highway Safety Bureau of the Department of Transportation (DOT), left government employment April 17, 1970, having previously entered into a three-year employment contract with Axicom. After working

20 months for Axicom, he was discharged "for cause." He sues for compensation allegedly still owing under the employment contract and seeks other damages claimed to result from his discharge. The case was tried to the Court without a jury.

At pretrial the Court, *sua sponte*, questioned the validity of the contract and this issue must now be faced at the outset. In April, 1969, Jordan had a private meeting with the President of Axicom at the latter's home and purchased 2,000 shares of Axicom for $10,000 from the President's personal holdings, after disclosing his employment with DOT. Beginning in December, 1969, or January, 1970, an employment arrangement came under discussion. Jordan had numerous meetings and telephone calls with Axicom. It was then apparent that Congress would pass tire safety legislation,* and that Jordan's unit of DOT, which would be responsible for implementing regulations, was giving advice on the legislation.

As a result of these discussions Jordan, while still employed by DOT, went to work simultaneously for Axicom commencing April 1 under a written contract providing for $25,000 per annum and various stock option and other benefits. Axicom was not a tire company but had computer know-how. It was contemplated that Jordan would use his connections and experience to encourage tire manufacturers and retreaders to use Axicom computers for storage and retrieval data that would be necessary to comply with the Act and its implementing regulations. It was expected that there would be strong competition to provide this necessary service. Jordan's government work involved him in every aspect of tire regulation within the agency. While still with DOT, Jordan undertook to prepare a presentation for tire manufacturers and retreaders who were prospective users of the Axicom system. He consulted with the company to the end that when the legislation passed, Axicom, guided by Jordan's inside knowledge, would be first in the field with a program geared to DOT's expected requirements. This presentation was prepared, Jordan consulted, salary and some travel expenses were paid him by the company.

It was agreed that Jordan would remain with DOT until Axicom's proposal was ready to be submitted to the trade in order to assure that DOT and the tire manufacturers were receptive. This was done. It was also agreed that Jordan would be based in Washington after leaving DOT and would thereafter continue to use his contacts and access to DOT to further Axicom's business interests, dealing with the same branch he previously headed. This also was done. Jordan thought it highly probable that he could get appointed to the Highway Safety Advisory Council and as consultant to the Highway Safety Bureau. He represented this would be highly beneficial to Axicom. Jordan sought to keep all these matters private during the early stages.

■ An arrangement of this kind is not only unethical, contrary to Executive Order No. 11222, 30 Fed.Reg. 6469 (1965), 18 U.S.C. § 201 note (1969), but also in clear violation of 18 U.S.C. §§ 208 and 209. Accordingly, the contract is unenforceable. *See generally*, 6A A. Corbin, Contracts §§ 1518 et seq. (1962).

■ Jordan was fired because his grandiose expectations did not materialize and Axicom lost money in the venture. This did not justify a discharge "for cause" under the contract. Axicom cannot prevail on its $500,000 counterclaim based on the fallacious contention that Jordan's puffing representations, which were qualified and highly opinionated, constituted misrepresentation as a matter of law.

* H.R. 10105, 91st Cong., 1st Sess. (1970), Pub.L. No. 91–265, §§ 1–9, 84 Stat. 262 (May 22, 1970), amending the National Traffic and Motor Vehicle Safety Act of 1966.

**1136**

The foregoing shall constitute the Court's findings of fact and conclusions of law.

The case having already been dismissed as to defendant No. 2 McFadden at the close of plaintiff's evidence, the remainder of the action and the counterclaim are each dismissed. Each party shall bear its costs.

So ordered.